**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **STEVEN THOMPSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 26-CV-169-GLJ** |
| | ) | |
| **PUBLIC SERVICE COMPNAY OF OKLAHOMA,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>OPINION AND ORDER</u>

This matter comes before the Court on Plaintiff's Motion to Remand [Docket No. 13]. Plaintiff initiated this action in state court in Carter County, Oklahoma, Case No. CV-2026-55 ("State Court Case"). Defendant removed this action pursuant to 28 U.S.C. §§ 1331, 1441 and 1446. *See* Docket No. 2 ("Notice of Removal"). Plaintiff now seeks to have the case remanded to state court because he claims the case has been fully tried and submitted to the state court, this Court lacks subject matter jurisdiction, and Defendant waived its right of removal by participating in the state court proceedings. For the reasons set forth below, the Plaintiff's Motion to Remand [Docket No. 13] is DENIED.

### Procedural Background

Plaintiff filed his action on May 7, 2026, seeking a declaratory judgment that he has an arial or avigation easement over Defendant's high voltage electric transmission lines located on Plaintiff's adjoining neighbor's property. *See* Docket No. 2, Ex. 2. Defendant does not own the land at issue but has a recorded easement from the property owner to

locate its poles and transmission lines on the property. *Id*., p. 2. Plaintiff alleges that he has operated a Federal Aviation Administration chartered airport on his property since 2007 and the flight path for takeoffs and landings extends over the top of Defendant's existing poles and power lines. *Id*., Ex. 2. Plaintiff further alleges that this use of the airspace above Defendant's poles and power lines for the past 19 years establishes an avigation easement and prevents Defendant's ongoing project to update the transmission lines with taller metal poles, thereby interfering with takeoffs and landings at Plaintiff's airport. *Id*. Plaintiff also seeks injunctive relief preventing Defendant's construction project. *Id*.

Upon filing his state petition, Plaintiff presented the state court with a proposed order setting a hearing on his requested injunctive relief. The state court, after conferring with Defendant's counsel by telephone, signed and entered the order setting "the matter for hearing on" May 19, 2026 at 3:30 p.m. *See* Docket No. 2, Ex. 5. Defendant's counsel accepted service on behalf of Defendant on May 7, 2026 and Defendant filed a motion to dismiss on May 15, 2026. *Id*., Ex. 3. Plaintiff responded to Defendant's motion to dismiss on May 19, 2026. At the May 19, 2026 hearing, the court announced the matters for consideration to be Plaintiff's petition for injunction and Defendant's motion to dismiss. *See* Docket No. 13, Ex. 1 at p.3, lns. 4-10. However, the hearing concluded without addressing the motion to dismiss and the court took the injunction issue under advisement. *Id*., p. 78, lns. 1-18. On May 29, 2026, Plaintiff filed his request for findings of fact and conclusions of law in his declaratory judgement and injunctive relief claim. *See* Docket No. 2, Ex. 6. Also, on May 29, 2026, Defendant removed the action to this Court. *Id*.

## Analysis

### I. Legal Standard

Federal courts are courts of limited jurisdiction, with subject matter jurisdiction only over matters authorized by the U.S. Constitution or by Congress. *See* U.S. Const. art. III, § 2, cl. 1, & *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). As relevant here, district courts have "original jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. To determine jurisdiction, courts follow the "well-pleaded complaint" rule, which requires that "the federal question giving rise to jurisdiction must appear on the face of the complaint." *Nicodemus v. Union Pacific Corp.*, 440 F.3d 1227, 1232 (10th Cir. 2006) (quoting *Karnes v. Boeing Co.*, 335 F.3d 1189, 1192 (10th Cir. 1994)). As a result, federal question jurisdiction may not be based on a defense that raises federal issues. *Id*. (quoting *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804, 808 (1986)). Similarly, "a plaintiff may not circumvent federal jurisdiction by omitting federal issues that are essential to his or her claim." *Id*.

If federal jurisdiction does not appear on the face of a well-pleaded complaint, federal jurisdiction may exist "over state-law claims that implicate significant federal issues." *Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*, 454 U.S. 308, 312 (2005). In this "special and small category" of cases, "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013).

Finally, "[i]t is well-established that statutes conferring jurisdiction upon the federal courts, and particularly removal statutes, are to be narrowly construed in light of our constitutional role as limited tribunals." *Pritchett v. Office Depot, Inc.,* 420 F.3d 1090, 1094-1095 (10th Cir. 2005) (citing *Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 108-109 (1941); *United States ex rel. King v. Hillcrest Health Ctr.,* 264 F.3d 1271, 1280 (10th Cir. 2001)). "The burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction." *Montoya v. Chao,* 296 F.3d 952, 955 (10th Cir. 2002); *see also McNutt v. General Motors Acceptance Corp. of Indiana, Inc.*, 298 U.S. 178, 182 (1936). "[A]ll doubts are to be resolved against removal." *Fajen v. Found. Reserve Ins. Co.,* 683 F.2d 332, 333 (10th Cir. 1982).

## II. Motion to Remand

### *A. Subject Matter Jurisdiction*

Plaintiff argues that there is no federal jurisdiction because there is no federal question meeting the "arising under" standard of 28 U.S.C. § 1331 and, at most, Defendant attempts to raise a federal issue as a defense. Plaintiff further characterizes Defendant's argument in favor of federal jurisdiction as inconsistent with its argument at the May 19, 2026 hearing and that federal law does not control the airspace at issue for his avigation easement, *i.e.* below 300 feet.

Defendant's Notice of Removal specifically references the basis of federal jurisdiction as the limited exception for state-law claims that implicate a significant federal issue, citing *Grable*. *See* Docket No. 2, p. 3. In its response to the motion to remand, Defendant expands on this argument, noting that Plaintiff must look to federal law to

determine whether he can establish the adverse or hostile element of a prescriptive avigation easement. *See* Docket No. 16, pp. 5-6. Specifically, Defendant argues that federal law defines "navigable airspace" to include the airspace used for takeoff and landing of aircraft and that "a citizen of the United States has a public right of transit through navigable airspace." *See* 49 U.S.C. §§ 40102(a)(32) and 40103(a)(2), respectively. Thus, Defendant argues that federal law is critical in establishing as a matter of law the adverse or hostile use of the disputed airspace necessary to establish a prescriptive avigation easement. *See* Docket No. 16, pp. 5-7.

As noted above, there is a narrow and limited category of federal jurisdiction over state-law claims that implicate a significant federal issue, *Grable*, 545 U.S. at 321, under which the court evaluates four factors, *Gunn*, 568 U.S. at 258 ("federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress.").

*1. Federal Issue Necessarily Raised*

Application of federal law is necessary to determine Plaintiff's claimed avigation easement by prescription.[1] "In Oklahoma, easements may be acquired by prescription." *Schafer v. Centerpoint Energy Oklahoma Gas*, 2018 WL 10140171, at *4 (N.D. Okla. May

[1] Although Plaintiff never uses the phrase "prescriptive easement" in his Petition, a plain reading of the Petition offers no other basis for asserting an avigation easement except through the open and continuous takeoffs and landings over the adjoining landowner's property and Defendant's poles and powerlines during a 19-year period. *See* Docket No. 2, Ex. 2. In Plaintiff's Response to Defendant's Motion to Dismiss, however, he expressly states his avigation easement is "an adverse easement in the disputed airspace over Defendant's power line." *See* Docket No. 20, p. 3.

21, 2018) (citing *Frater Oklahoma Realty Corp. v. Allen Laughon Hardware Co.*, 245 P.2d 1144, 1147 (Okla. 1952)); Okla. Stat. tit. 60, § 333). Establishing a prescriptive easement is generally the same as establishing an easement by adverse possession. *Id*. (citing *Willis v. Holley*, 925 P.2d 539, 540 (Okla. 1996)). To establish adverse possession, "the claimant must show that possession was [1] hostile, [2] under a claim of right or color of title, [3] actual, [4] open, [5] notorious, [6] exclusive, and [7] continuous for the statutory period of fifteen years. The party claiming title adversely has the burden of proving every element by clear and positive proof. In questionable cases, presumptions favor the record title holder." *Id*. (quoting *Akin v. Castleberry*, 286 P.3d 638, 642–643 (Okla. 2012)).

"[T]he element of 'hostility' does not go to the state of mind of the claimant, but rather the nature, viewed objectively, of the claimant's possession. The essence is that the claimant's possession must be hostile to, or clearly inconsistent with, ownership by the record owner." *Id*. (quoting Malcolm E. Rosser IV & Elizabeth Moseley Guse, *Adverse Possession in Oklahoma: An Idea Whose Time Has Come and Gone?* 72 Okla. Bar Journal 713, 714 (2001)). "If the owner acquiesces in or consents to the use of the land, then the use is not adverse and title by prescription cannot be acquired." *Willis*, 925 P.2d at 541; *see also Zimmerman v. Newport*, 416 P.2d 622, 629–30 (Okla. 1966) ("However exclusive and however long endured, permissive possession can never ripen into title . . . . Possession under a license or agreement granting the right of occupancy is not adverse; the license or agreement precludes the possibility of a claim of adverse possession").

Thus, to prevail on his prescriptive avigation easement claim, Plaintiff must prove that his use of the airspace above the Defendant's easement was hostile or adverse. This

question necessarily raises a federal question. As noted above, "[t]he United States Government has exclusive sovereignty of the airspace of the United States[,]" and "[a] citizen of the United States has a public right of transit through the navigable airspace." 49 U.S.C §§ 40103(a)(1) & (2). Moreover, "'navigable airspace' means airspace above the minimum altitudes of flight prescribed by regulations under this subpart and subpart III of this part, *including airspace needed to ensure safety in the takeoff and landing of aircraft*." 49 U.S.C. § 40102(a)(32) (emphasis added).

Defendant argues that application of federal law is necessary to determine if Plaintiff can satisfy the adverse/hostility element for a prescriptive avigation easement because the airspace at issue is controlled by the federal government and, even if private property rights could attach, it cannot do so because federal law makes the use of the subject airspace permissive. *See* Docket No. 16, pp. 6-7. Indeed, although Oklahoma courts have not ruled on whether a prescriptive avigation easement is possible in Oklahoma, several courts have ruled that it cannot be established under federal law. *See*, *e.g.*, *Fiese v. Sitorius*, 526 N.W.2d 86, 88 (Neb. 1995) (Federal statute granting public right of freedom of transit through navigable airspace including space needed to insure safety in takeoff and landing of aircraft prevents acquisition of avigation easement by prescription and because use is permissive there is no private right of action to protect right to use navigable airspace over land of another; the sole remedy is filing a complaint with Secretary of Transportation or Civil Aeronautics Board); *County of Westchester, N.Y. v. Com'r of Transp. Of State of Conn.*, 9 F.3d 242 (2nd Cir. 1993), *cert. denied*, 511 U.S. 1107 (1994) (Because federal law prohibits landowners from obtaining injunctive relief

against aircraft using navigable airspace of the United States, plaintiff could not acquire prescriptive rights); *Air Pegasus of D.C., Inc. v. United States*, 424 F.3d 1206, 1218 (Fed. Cir. 2005) (The "'background principles' of long-standing federal property law indicate that there is no private property right in the navigable airspace of the United States. For that reason, we hold that Air Pegasus does not have a cognizable property interest in its alleged right to access the navigable airspace.").

In reply, Plaintiff argues Defendant cannot raise its jurisdictional argument because it did not raise it during the May 19 hearing and that such argument is a defense that is an impermissible basis for federal jurisdiction. *See* Docket No. 19. Plaintiff also argues that the airspace at issue is outside the definition of public airspace, presumably repeating its 300-foot argument based on *United States v. Causby*, 328 U.S. 256 (1946), but offering no further elaboration.

First, the Court agrees that federal law supplies an essential element of Plaintiff's prescriptive avigation easement and, thus, federal law is not a defense. Whether Plaintiff's use of the airspace above the Defendant's poles and powerlines was permissive or adverse is a necessary element of Plaintiff's claim and such question turns on interpreting and applying federal law. Where an element of a state-law claim turns on a federal issue, the state-law claim implicates significant federal issues. *See Nicodemus v. Union Pacific Corp.*, 440 F.3d 1227 1235 (10th Cir. 2006) ("Plaintiffs' specific allegations of unjust enrichment are derived not from the alleged trespass, but from misuse of the right-of-way. The Morrises' complaint states that Union Pacific was unjustly enriched by its 'unlawful use and occupancy of . . . plaintiffs' . . . land and the retention of rents and other

compensation arising from the unlawful use and occupancy of the right-of-way.' The Nicodemuses allege that 'under the laws of the United States' the right-of-way is for railroad purposes and Union Pacific 'has no ownership or possessory interest in or right to exercise dominion and control over these rights of way beyond that which is necessary for the operation of a railroad.' The complaint further alleges that Union Pacific has '[w]rongfully claim[ed] an ownership or possessory interest . . . beyond that which is necessary for the limited purpose of operating a railroad over the lands on which [it] currently . . . has a right-of-way. . . .' Finally it states that by licensing to telecommunications companies the right to bury fiber optic cables, it has 'unlawful[ly] use[d] and occup[ied] their land,' depriving them of the 'rents [and] profits.' To prove that Union Pacific acted unlawfully, Plaintiffs must establish that the right-of-way [created by federal law] prohibited the use to which it was put. The federal issue, therefore, arises in Plaintiffs' case-in-chief, not by way of defense.") (citations omitted). Similarly, Plaintiff must establish his hostile or adverse use of the airspace for taking off and landing in his case-in-chief. Thus, the federal issue Defendant raises is not a defense.

Second, Defendant had no reason to specifically address the basis for federal jurisdiction at the May 19, 2026 state court hearing as neither federal jurisdiction nor removal were at issue in that hearing. While the issue of whether hostility could be established could and likely should have been raised at the May 19, 2026 hearing, Defendant raised the issue in his state court motion to dismiss, which it filed before the hearing and, as discussed further in Section II.B below, the hearing centered on the injunction issue not Defendant's motion to dismiss . *See* Docket No. 2, Ex. 3.

Third, Plaintiff's argument that the airspace at issue is outside the federal definition of public airspace is misplaced. Plaintiff is correct that *United States v. Causby*, 328 U.S. 256 (1946), held that:

> the flights in question were not within the navigable airspace which Congress placed within the public domain. If any airspace needed for landing or taking off were included, flights which were so close to the land as to render it uninhabitable would be immune. But the United States concedes, as we have said, that in that event there would be a taking. Thus, it is apparent that the path of glide is not the minimum safe altitude of flight within the meaning of the statute. The Civil Aeronautics Authority has, of course, the power to prescribe air traffic rules. But Congress has defined navigable airspace only in terms of one of them—the minimum safe altitudes of flight.

*Id*. at 264. Subsequently, however, Congress amended the statutory definition of "navigable airspace" to specifically include "airspace needed to ensure safety in the takeoff and landing of aircraft[,]" 49 U.S.C. § 40102(a)(32), which has been the definition during the relevant period in this case. Therefore, Plaintiff's argument that the airspace at issue is outside the definition of navigable airspace is at odds with current law and is rejected.

*b.* *The Federal Issue is Disputed*

The federal issue is disputed by Plaintiff as he continues to assert he has established a prescriptive avigation easement over Defendant's poles and powerlines through takeoffs and landings at his airport for 19 years. Indeed, as noted above, because interpreting and applying the federal law issue is necessary to determine a critical element of his claim, the federal issue is necessarily disputed. Further, Plaintiff does not challenge or argue this issue in his Motion or Reply. Such a failure is routinely deemed a waiver. *See Maestas v. Segura*, 416 F.3d 1182, 1190 n. 9 (10th Cir. 2005) (Plaintiffs abandoned claims "as evidenced by their failure to seriously address them in their briefs"); *Rock Roofing, LLC v.*

*Travelers Cas. & Sur. Co.*, 413 F. Supp. 3d 1122, 1128 (D. N.M. 2019) (Plaintiff's failure to respond to defendant's argument waived the issue); *Palmer v. Unified Gov't of Wyandotte Cty.*, 72 F. Supp. 2d 1237, 1250-51 (D. Kan. 1999) ("[T]he court deems plaintiff's failure to respond to an argument raised in defendants' papers tantamount to an express abandonment of any such claim.").

*c. The Federal Issue is a Substantial Issue*

In addition to being a disputed federal issue, the issue must be "a substantial question of federal law." *Grable*, 545 U.S. at 312. "A case should be dismissed for want of a substantial federal question only when the federal issue is '(1) wholly insubstantial or obviously frivolous, (2) foreclosed by prior cases which have settled the issue one way or another, or (3) so patently without merit as to require no meaningful consideration.'" *Nicodemus*, 440 F.3d at 1236 (quoting *Wiley v. Nat'l Collegiate Athletic Ass'n.*, 612 F.2d 474, 477 (10th Cir. 1979)).

None of the factors set out in *Nicodemus* are present in this matter. The federal issue is not frivolous, is not foreclosed by prior cases settling the issue and it is not without merit. Again, interpreting and applying federal law is critical to determining Plaintiff's claim. Moreover, Plaintiff again does not challenge or argue this issue in his Motion or Reply.

*d. Federal Jurisdiction Will Not Disrupt the Federal-State Balance Approved By Congress*

Exercising federal jurisdiction in this matter will not disrupt the federal-state balance approved by Congress. As exhibited by the relatively few cases on prescriptive

avigation easements, the issues raised in this case are somewhat rare and atypical. Thus, any concern regarding cases commonly involving a similar dispute and creating a large body of state-law cases obtaining federal jurisdiction is misplaced. This contrasts with the concerns raised in *Merrell Dow Pharmaceuticals*, 478 U.S. 804, which involved state common law negligence claims that are frequently asserted. *See Grable*, 545 U.S. at 316-19. Furthermore, Plaintiff again does not challenge or argue this issue in his Motion or Reply.

Accordingly, the Court concludes that because interpreting and applying federal law to the critical issue of hostility in Plaintiff's claim is a substantial federal issue, Defendant satisfies its burden of establishing that this case falls into the narrow and limited category of federal jurisdiction over state-law claims that implicate a significant federal issue. Thus, there is federal jurisdiction under 28 U.S.C. § 1331.

**B. Waiver Through Participation in State Court Case Proceedings**

Plaintiff argues that, even if federal jurisdiction exists, Defendant waived its right to remove this matter through its participation in the State Court Case proceedings. Specifically, Plaintiff argues Defendant waived the right to remove by seeking an adjudication on the merits of the case by filing a motion to dismiss in the State Court Case and by participating in the "trial" of that case. *See* Docket 13, pp. 6-8.

Waiver of the right to remove through participation is a common-law creation that can occur where a defendant participates in the state court before seeking removal. *City of Albuquerque v. Soto Enterprises, Inc.*, 864 F.3d 1089, 1093 (10th Cir. 2017) (citing *Rothner v. City of Chicago*, 879 F.2d 1402, 1408 (7th Cir. 1989) and 14B Charles Alan

Wright et al., Federal Practice and Procedure § 3721 (4th ed. 2017) ("A state court defendant also may lose or waive the right to remove a case to a federal court by taking some substantial offensive or defensive action in the state court action. . . .")). "Generally, a defendant waives removal 'by taking some substantial offensive or defensive action in the state court action indicating a willingness to litigate in that tribunal before filing a notice of removal with the federal court.'" *Id.* at 1098 (quoting *PR Grp., LLC v. Windmill Int'l, Ltd.*, 792 F.3d 1025, 1026-27 (8th Cir. 2015)). "This waiver must be clear and unequivocal, meaning that 'short of [the defendant] seeking an adjudication on the merits, the right to removal is not lost. . . .'" *Id.* (quoting *Windmill*, 792 F.3d at 1026 (quoting *Tedford v. Warner-Lambert Co.*, 327 F.3d 423, 428 (5th Cir. 2003)).

In *Soto*, while the Tenth Circuit established a "bright-line rule" that a defendant that "files a motion to dismiss seeking disposition, in whole or in part, on the merits in state court before removing the case to federal court [ ] manifests a 'clear and unequivocal' intent to submit the case to the state court's jurisdiction" thereby waiving removal, it also recognized "that in limited circumstances, this bright-line rule can lead to unfair results, so we fashion an exception as well." *Id.* at 1099. Under this exception, the Tenth Circuit "will not find waiver of the right to remove when a state's procedural rules compel a defendant's state-court participation[]" such as "when a defendant lose its opportunity to file a motion to dismiss because it failed to comply with a state's procedural rule." *Id.* Whether the exception applies turns on whether defendants will potentially be harmed, such as upon remand a defendant would "lose its opportunity to file a motion to dismiss because it failed to comply with a state's procedural rule." *Id.*

*1. Defendant's Motion to Dismiss*

Defendant argues that its motion to dismiss in the State Court Case falls under the *Soto* waiver exception and the Court agrees. As Defendant notes, under Oklahoma's Pleading Code, it was required to serve a responsive pleading or file a motion to dismiss within 20 days of service 12 Okla. Stat. § 2012.A. Defendant's counsel agreed to accept service of the summons in the State Court Case on the day it was filed, May 7, 2026. Therefore, Defendant was obligated to answer or file a motion to dismiss by May 27, 2026, even though it had 30 days, or until June 8, 2026[2], to remove the State Court Case to federal court. 28 U.S.C. § 1446(b). Plaintiff filed its motion to dismiss on May 15, 2026, which was earlier than required, although it appears it did so because of the scheduled May 19, 2026 hearing in the case. As such, Defendant's motion to dismiss in the State Court Case falls squarely under the *Soto* waiver exception as it was compelled to answer or file a motion to dismiss prior to its deadline for removal and its failure to do so could have resulted in potential harm. *See*, *e.g.*, *Fresh, Inc. v. Transp. Ins. Co.*, 2026 WL 206713, at *5-6 (N.D. Okla. Jan. 27, 2026) (defendants did not waive their right to removal by filing a motion to dismiss in Oklahoma state court because they were compelled to participate "due to the state's procedural rules"). Thus, Defendant filing its motion to dismiss in the State Court Case is not a waiver of its right to remove.

[2] The 30 days ran on Saturday, June 6, 2026.

*2. Defendant's Participation in the May 19, 2026 Hearing*

Plaintiff also argues Defendant waived removal by participating in the May 19, 2026 "trial", which Plaintiff asserts "Defendant insisted should be set as quickly as possible." *See* Docket No. 13, p. 7. Defendant argues that it did not seek the hearing and the hearing was not a trial on the merits of the case. *See* Docket No. 16.

While the undersigned finds this to be a close call, it nonetheless agrees that Defendant's participation in the May 19, 2026 hearing was not a waiver of its removal right. First, there is nothing in the record indicating that Defendant asked for the hearing. The record demonstrates that Plaintiff sought an order from the court setting a hearing the same day it filed the Petition. The Order Setting Hearing was filed May 7, 2026 and further indicates that Defendant's counsel was consulted telephonically and that "the parties advised" that they would like the matter heard as soon as practically possible. *See* Docket No. 2, Ex. 5.

While requesting a hearing on its motion to dismiss could waive its right to remove, nothing in the record indicates Defendant did so. *See, e.g.*, *Kolb v. Mayes Emergency Servs. Tr. Auth.*, 2022 WL 3654743, *2-3 (N.D. Okla. Aug. 24, 2022) (the district court held that "requesting a hearing on a motion to dismiss in Oklahoma state court is substantial defensive action indicating a willingness to litigate in state court which waives a defendant's right to remove the action to federal court."). Obviously, the undersigned was not privy to the discussions between the court and counsel regarding setting this hearing, but the order itself does not support Plaintiff's assertion that Defendant's counsel requested the hearing or singularly asked that it be held expeditiously. Indeed, at the time the order

setting the hearing was entered, May 7, 2026, Defendant had not filed its motion to dismiss and would not do so for eight more days. *See* Docket No. 2, Ex. 3. While the court indicates in opening the May 19, 2026 hearing that it came on for both Plaintiff's request for injunction and Defendant's motion to dismiss, there is nothing in the record indicating Defendant requested that the May 19, 2026 hearing also include consideration of its motion. *See* Docket No. 13, Ex. 1 at p. 3, lns. 4-10. In fact, Defendant's counsel specifically stated on the record that he thought the hearing was only addressing the injunction, although he nonetheless averred that he would address both issues that day if the court wanted him to do so. *Id*. at p. 3, ln. 24 – p. 4, ln. 2. As it turned out, the hearing concluded without addressing Defendant's motion due to time constraints. *Id*., p. 78, lns. 12-16. Counsel acquiescing in the court's desire to hear argument on a pending motion at a previously scheduled hearing is not the same thing as specifically requesting a hearing on that motion and does not represent what occurred in *Kolb*.[3]

Second, the record does not support the conclusion that the hearing was the final trial on the merits of the case. At best, it is vague what the hearing was intended to be. The title of the order setting it specifically refers to it as a "Hearing", and the order states the court "hereby sets the matter for hearing on" May 19, 2026. *See* Docket No. 2, Ex. 5. The subject matter of the hearing, however, was somewhat vaguely referred to as a "request for Court intervention and injunctive relief. . . ." *Id*. As noted above, the hearing was set

---

[3] In *Kolb*, two defendants filed motions to dismiss in state court, and one requested a hearing on its motion by submitting an order for hearing to the court, which was set. 2022 WL 3654743, *2-3.

before Defendant filed its motion. Defendant's counsel did not give any indication he understood the hearing to be a trial on the merits. Indeed, Defendant's motion to dismiss argued the standards of a preliminary injunction – including the various required elements for such relief that Plaintiff did not include in his Petition. *Id.*, Ex. 3 at pp. 12-18. It is also undisputed that the proceedings in the State Court Case did not follow any of the pretrial procedures set forth in Rule 5 of the Rules for District Courts of Oklahoma, including, *inter alia*, a scheduling order, discovery, a pretrial conference, a pretrial conference order, final witness and exhibit lists, or other procedures typically associated with a trial. 12 Okla. Stat. Chapter 2, Appendix; 12 Okla. Stat. §§ 551, *et seq*. Given the extremely expedited nature of the proceedings from filing the Petition to the hearing only 12 days later, it is not realistic to simply assume the May 19, 2026 hearing was the final trial on the merits without some clear and unequivocal evidence that all parties understood that to be the case. Moreover, Plaintiff's submission of its request for findings of facts and conclusions of law ten days after the hearing cannot change what the proceeding was at the time it occurred. *See* Docket No. 2, Ex. 6. Simply put, there is insufficient evidence in the record to support the clear and unequivocal requirement to conclude that Defendant's participation in the May 19, 2026 hearing was sufficient to establish the common-law waiver of removal. For the same reason, the undersigned concludes that Defendant's removal after filing its motion to dismiss or participating in the May 19, 2026 hearing is not prohibited by collateral estoppel and is not an impermissible attempt to take a second bite at the apple.

## CONCLUSION

Accordingly, as set forth herein, Plaintiff's Motion to Remand [Docket No. 13] is DENIED.

DATED this 17th day of September, 2026.

**GERALD L. JACKSON**
**UNITED STATES MAGISTRATE JUDGE**